## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DEBRA CHERKAOUI, | Civil Action No. 14-cv-10571-LTS |
| Plaintiff, | |
| v. | **MEMORANDUM AND ORDER** |
| CITY OF QUINCY, | |
| Defendant. | |

**CABELL, Magistrate Judge**:

This matter comes before the Court upon a motion to compel discovery [dkt #29] filed by the defendant, city of Quincy ("the defendant" or the "city of Quincy").  The plaintiff, Debra Cherkaoui ("the plaintiff"), opposes the motion.  After considering the parties' submissions, the law, and following oral argument, the defendant's motion to compel is ALLOWED in part and DENIED in part.  The reasons for these rulings are explained below.

## I.   RELEVANT BACKGROUND[1]

In or around 1998 the defendant hired the plaintiff, who is Muslim, as a public school teacher.  Except for a relatively brief interruption when her child was born, the plaintiff worked for the city of Quincy continuously and regularly received positive performance evaluations.  In April 2009 the plaintiff began to wear a headscarf for religious reasons.  She alleges that the defendant thereafter began to discriminate against her by treating her discourteously, treating her differently than other similarly situated teachers, giving her inappropriate or impractical assignments, and failing to respond satisfactorily when she complained.  The plaintiff suffers from

---

[1] The allegations contained in this Memorandum and Order are from the plaintiff's amended complaint and are accepted as true for purposes of the present motion only.

Attention Deficit Hyperactivity Disorder ("ADHD") and alleges that the defendant also failed to accommodate her requests for accommodations for her disability.  The plaintiff subsequently resigned on October 31, 2013 and eventually commenced the present action.

In her amended complaint, the plaintiff alleges ten separate causes of action.  Pertinent here, four of the claims allege disability discrimination arising from her ADHD, including claims for discrimination and for retaliation, in violation of M.G.L. ch. 151B (Counts 5 and 7), and similar claims for discrimination and retaliation under the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12101 (Count 6 and 8).  The plaintiff also alleges that she has suffered "severe emotional distress" and "continues to be damaged" as a result of the defendant's conduct.  In addition to these claims, the plaintiff elaborated through her opposition and at oral argument that she has also "had some issues with depression in the past and received some treatment for it."  The plaintiff does not allege that her depression is a disability, or that she has been discriminated against on the basis of it, but she claims that it "bears some relevance to damages to the extent that it involves a prior health issue."

Against this backdrop, the defendant moves to compel the plaintiff to provide fully executed releases to allow the defendant to obtain medical records from two specific entities, and state records relating to her unemployment benefits.[2]

## II.  **DISCUSSION**

### a.   The Legal Framework

Federal Rule of Civil Procedure 37(a)(1) provides that ". . . a party may move for an order compelling disclosure or discovery[ ]" where the movant has conferred in good faith and attempted to obtain it without court action.  Fed. R. Civ. P. 37(a)(1).  In that regard, "[p]arties may obtain

---

[2] The defendant also seeks attorney's fees and costs incurred in connection with this motion.

discovery regarding any matter, not privileged, that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26(b)(1).   "As a general matter, relevancy must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action."  *E.E.O.C. v. Electro-Term, Inc.*, 167 F.R.D. 344, 346 (D. Mass. 1996) (citation omitted).

      b.  <u>Analysis</u>

        *i.  Medical Records*

The defendant contends that it is entitled to discover any evidence bearing on the plaintiff's claimed ADHD disability, including evidence relating to her diagnosis and treatment, as well as the emotional distress damages she claims to have suffered.   The defendant argues that the information it seeks is "relevant to determining whether a sufficient causal connection exists" between the plaintiff's allegations of discrimination and her damages, and is also relevant to the extent it supports or fails to support the plaintiff's claim of ADHD and a depressive disorder as pre-existing conditions.   The defendant specifically seeks records from two entities it has a basis to believe provided treatment to the plaintiff during the relevant time period, including Boston Health Care and the Wellcare Physicians Group, LLC.   The plaintiff argues that the medical records are protected from disclosure by the psychotherapist-patient privilege.

Federal law generally recognizes a psychotherapist-privilege, which protects from disclosure communications between the psychotherapist and his or her patient.  *See Jaffee v. Redmond*, 518 U.S. 1, 15-17 (1996); *Vanderbilt v. Town of Chilmark*, 174 F.R.D. 225 (D. Mass. 1997).   In order for the privilege to apply, a party must put forth sufficient facts to show by a preponderance of the evidence that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis

or treatment. *In re Grand Jury Proceedings (Gregory Violette),* 183 F.3d 71, 73 (1ˢᵗ Cir. 1999). Here, the plaintiff, beyond asserting that the privilege applies, has not attempted to articulate how each of the elements has been met. Indeed, the plaintiff has not provided any evidence relating to either Boston Health Care or the Wellcare Physicians Group, the type and breadth of services each entity provides, the type of treatment each provided to the plaintiff, who provided the treatment, whether any communications the plaintiff had with anyone at either facility were confidential, and with a licensed psychotherapist, and whether any such communications were in the course of diagnosis or treatment. As such, there is no basis to find the privilege applicable here.

To be sure, it would not be unreasonable to infer that the medical records at issue probably do relate to psychotherapeutic treatment. After all, the plaintiff has alleged a mental health related disability, depression and severe emotional damages. She is, moreover, in the best position to know exactly what is in the records the defendant seeks, and has responded to the defendant's request by invoking the psychotherapist-patient privilege. But, an inference alone, unsupported by articulable facts put forth by the plaintiff, is just not enough to prove by a preponderance of the evidence that the records reflect treatment related, confidential communications with licensed psychotherapists. The Court thus concludes that the plaintiff has not met her burden of proof. The medical records at issue are therefore not protected from disclosure by the psychotherapist-patient privilege.

Even assuming for the sake of argument that the psychotherapist-patient privilege did apply, the plaintiff has waived the privilege because she has put her mental health history at issue. It is well established that a waiver of the psychotherapist-patient privilege occurs where a plaintiff puts a privileged communication at issue. Indeed, "[a] patient whose cause of action relies on the advice or findings of [his or] her psychotherapist cannot claim the privilege." *Vanderbilt*, 174

F.R.D. at 229.  Where a patient uses the substance of the psychotherapist-patient relationship to further his or her own cause, they cannot claim that the communication is privileged, because "a privilege 'cannot and should not at once be used as a shield and a sword.'"  *Id.* at 230 (*quoting Inserra v. Hamblett & Kerrigan, P.A.*, 1995 WL 54402 (D.N.H. 1995)).  That is the case here.  The plaintiff advances four causes of action explicitly alleging discrimination on the basis of her alleged mental health related disability.  She in addition alleges that she suffered "severe emotional distress" as a result of the discrimination, and claims that her suffering has been exacerbated by "issues with depression" for which she previously received treatment.  On these facts, there is no question that the plaintiff has based a significant part of her case on her mental health and she therefore has unequivocally and unambiguously placed her mental health at issue.  Accordingly, any psychotherapist-patient privilege that may have applied has been waived.

To be sure, the plaintiff asserts that she believes she will be able to prove her disability and her damages at trial without relying on medical records or evidence from her medical providers.  She argues that she therefore is not putting her mental health history at issue, and consequently has not waived the privilege.  The Court rejects this argument.  First, it is difficult to imagine how the plaintiff could ever hope to realistically prove she was suffering from ADHD and depression without relying on at least some evidence from medical records or care providers regarding a diagnosis and/or past treatment.  Even if she could, that is beside the point.  By directly linking the defendant's liability and her allegedly severe emotional distress to the issue of her mental health, the plaintiff has made her present and past condition a critical issue in this case and the defendant simply cannot be expected to defend itself against such claims without access to information regarding her treatment history.  *See Bradford v.  Meditech, Inc.*, 2002 WL 392496, at *2, fn. 1 (D. Mass. Feb. 19, 2002) ("Plaintiff, bringing claims under the Americans with Disabilities Act . .

. has clearly put his mental condition into issue[.]"); *Kronenberg v. Baker & McKenzie, LLP*, 747 F.Supp.2d 983, 986 (N.D. Ill. 2010) ("It is only when a party puts his mental state in issue through some action of his own designed to advance his interests in the case (such as by claiming a disability involving his mental state, …) that the privilege is waived."); *Sarko v. Penn-Del Directory Co.,* 170 F.R.D. 127, 130 (E.D. Pa 1997) ("Plaintiff must establish as the first element of her prima facie case of unlawful discrimination that she belongs to a protected category under the ADA. . . She therefore has placed her mental condition directly at issue in this case . . . [and] must therefore authorize the release of all records that contain confidential communications with her psychiatrist that are relevant to her mental condition during the time she was in Defendant's employ."); *Butler v. Burroughs Wellcome, Inc.*, 920 F.Supp. 90, 92 (E.D. N.C. 1996) ("In an action under the ADA, a plaintiff's medical history is relevant in its entirety.  It is impossible to answer the most basic questions, such as whether the plaintiff was generally foreclosed from similar employment by reason of a major life activity impairment, or otherwise qualified given a reasonable accommodation, or what a reasonable accommodation would have been, without full and complete access to the plaintiff's medical records.  And since a defendant is entitled to defend the ADA action by claiming that plaintiff's inability to work without [an] accommodation is the result of something other than the claimed disability, discovery along such lines must also be permitted.").  Accordingly, this portion of the defendant's motion to compel is ALLOWED.

### ii.  Unemployment Records

The defendant also seeks to compel the plaintiff to execute a release which would allow the defendant to obtain records from the Massachusetts Division of Unemployment Assistance ("DUA") relating to the plaintiff's receipt of unemployment benefits and her efforts to obtain new employment.  The defendant argues that these records are relevant to the extent they bear on the

issue of lost earnings, and whether there is a basis for a potential offset or mitigation of asserted lost earnings. The defendant acknowledges that the plaintiff has provided some information regarding this issue but contends that the information it has received is incomplete, unverified, and inconsistent with the records as the defendant understands they should be maintained. The plaintiff argues that she has produced a chart, apparently self-created, listing the amount of each check she received from the DUA, as well as a list of each job she applied for while she was unemployed. The plaintiff argues that the defendant thus has the information it needs and does not need to obtain the pertinent DUA records.

Even assuming (as the Court does) that the information the plaintiff has provided is correct, it does not render the DUA records the defendant seeks duplicative or irrelevant. As an initial matter, the plaintiff has not cited to any authority holding that a defendant is obligated to forego collecting and reviewing otherwise relevant administrative records where the plaintiff has purportedly provided the same information from another source. On the contrary, and as stated above, "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to any party's claim or defense …." Fed. R. Civ. P. 26(b)(1). At this juncture of the case, the narrow inquiry is whether the DUA records are relevant, and relevancy "must be broadly construed at the discovery stage such that information is discoverable if there is any possibility it might be relevant to the subject matter of the action." *Electro-Term, Inc.*, 167 F.R.D. at 346 (citation omitted). Indeed, "[r]elevant information includes any matter that is or may become an issue in the litigation." *Id.* (citation omitted).

There is no dispute here that the DUA records are relevant for purposes of evaluating and defending against the plaintiff's demand for lost wages, and that is true even if one assumes the records will mirror the information the plaintiff has already provided. If anything, the DUA

records are probably more desirable where they would presumably be accompanied by a declaration from the DUA's records custodian and thus face less of an issue with respect to authentication and admissibility issues at trial. Accordingly, it follows that the defendant should be entitled to discover the records, regardless of whether the defendant's purpose is to verify or complement the information the plaintiff has provided. *See Johnson v. Coca-Cola Enters., Inc.*, 2006 WL 1308152, at *1 (W.D. La. May 9, 2006) ("…the fact that Defendant may have some of the information already . . . does not justify Plaintiff's withholding of the information. . . Defendant is entitled to verify the information [already] in Defendant's possession and compare that information to any information produced. . . ."). This portion of the defendant's motion to compel is therefore ALLOWED.

### iii.   Attorney's Fees

Fed. R. Civ. P. 37(a)(5)(A) provides that where a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." The rule further provides, however, that the court must not order this payment if "the opposing party's nondisclosure, response, or objection was substantially justified[.]" Fed. R. Civ. P. 37(a)(5)(A)(ii). The Court finds that the plaintiff's objections, while ultimately unavailing, were nonetheless substantially justified. The Court therefore DENIES the defendant's request for costs and attorney's fees.

## III.   CONCLUSION AND ORDER

For the foregoing reasons, the portion of the defendant's motion to compel [dkt #29] asking that the plaintiff be required to execute releases for the medical records and the DUA records is

ALLOWED.  The portion of the motion requesting costs and attorney's fees is DENIED.

The Court hereby ORDERS the plaintiff to execute the releases within seven days of this Order.  The parties may make use of any received materials subject to the following conditions:

1.  All materials received pursuant to these releases shall be marked "confidential";

2.  Confidential material shall be used by the parties only for purposes of this litigation and for no other purpose except as required by law;

3.  Confidential material is to be disclosed only to the defendant's counsel and others in the office of the defendant's counsel who have a need to review confidential material for purposes of the current litigation, expert witnesses consulted or retained for the purpose of assisting the parties or as required by law, and the Court;

4.  In the event that either party makes the confidential material available to the individuals or experts listed above in section 3, the party will advise such individual or expert of the terms of this agreement and will request that they comply with the terms as set forth herein;

5.  Upon conclusion of this matter, the defendant will make available to opposing counsel all copies of the confidential material for retrieval or will destroy all copies except any confidential material which has been marked or entered into evidence at the trial of this matter.

None of these conditions may be modified or altered without permission of the Court.

**SO ORDERED.**

/s/ Donald L. Cabell
DONALD L. CABELL
United States Magistrate Judge

DATED:  July 23, 2015